# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **625 LEASING, LLC**<br>625 North State Route 4<br>Omar, Ohio 44807<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**REAL GOOD FOODS, INC.**<br>3 Executive Campus<br>Cherry Hill Township, New Jersey 08002<br><br>　　　　Defendant. | CASE NO. 1:25-cv-621<br><br>UNITED STATES DISTRICT JUDGE<br><br>**[JURY DEMAND ENDORSED HEREON]** |

## COMPLAINT

NOW COMES, the Plaintiff, 625 Leasing, LLC, and for its Complaint against the Defendant, Real Good Foods, Inc. states as follows:

### NATURE OF THE ACTION, PARTIES, JURISDICTION, AND VENUE

1. This action arises from the Plaintiff's lease of multi-million-dollar food processing equipment to Defendant primarily used to prepare gluten-free fried chicken sold in major big-box retailers throughout the United States, including Costco, Wal-Mart, Kroger, Target, and Publix. *See e.g.* https://realgoodfoods.com/ (last visited March 26, 2025).

2. Plaintiff is a limited liability company organized under the laws of the State of Ohio with a principal place of business in Omar, Ohio. No member of Plaintiff is a citizen of any other state.

3. Defendant is a for-profit corporation organized under the laws of the State of Delaware with a principal place of business in Cherry Hill, New Jersey. Until voluntarily delisting in February 2025, Defendant was formerly publicly traded on Nasdaq. *See* https://s3.amazonaws.com/b2icontent.irpass.cc/3003/rl142178.pdf (last visited March 26, 2025).

4. Furthermore, Defendant operates an industrial food processing facility in Bolingbrook, Illinois.

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendant, and the amount in dispute exceeds $75,000.00.

6. Defendant is subject to the personal jurisdiction of this Court because it expressly consented to the exclusive jurisdiction of courts having jurisdiction over Lorain County, Ohio. (**Ex. A, Section 22**)

7. For the same reason, venue is proper in this District under 28 U.S.C. § 1391. (*Id.*)

## FACTS COMMON TO ALL CLAIMS

8. On or about October 9, 2023, Plaintiff and Defendant executed an Equipment Lease Agreement (the "Lease") whereby Plaintiff agreed to lease Defendant certain food processing equipment to be used at its Bolingbrook facility in exchange for Six Million Seven Hundred Ninety-Five Thousand Ninety-Three Dollars and Seventy Cents ($6,795,093.70) paid over three (3) years.

9. Other material terms of the Lease include, but are not limited to:

   a. Lessor acknowledges receipt of the sum of One Million, One Hundred Fifty Thousand, and 00/100 dollars ($1,150,000.00) from Lessee on or before the Commencement Date. (**Ex. A, Section 4(a)**)

2

b. Further, Lessee agrees to pay Four Million, Four Hundred Eighteen Thousand, Eight Hundred Sixty and 00/100 dollars ($4,418,860.00) in thirty-six (36) equal monthly installments of One Hundred Fifty-Six Thousand, Eight Hundred Eight, and 16/100 dollars ($156,808.16) beginning on or before the Commencement Date and continuing on the first day of each successive month thereafter until all rent and taxes are paid. (**Ex. A, Section 4(b)**)

c. The Equipment is, and shall at all times be and remain, personal property, and title thereto shall remain with Lessor exclusively, notwithstanding that the Equipment or any part thereof may now be, or hereafter become, in any manner, affixed or attached to, or embedded in, or permanently resting upon, real property, or any building thereon, or attached in any manner to that which is permanent, by any means whatsoever. Upon the expiration or termination of this Lease, Lessee shall, at Lessee's own expense, promptly return the Equipment by delivering it, packed and ready for shipment, to such place or carrier as Lessor may specify, in the same condition as received, reasonable wear and tear excepted. (**Ex. A, Section 9**)

d. If Lessee fails (a) to pay rent or any other payment within fifteen (15) days from its due date, or (b) to pay any other indebtedness to Lessor arising independently of this Lease, or (c) in the event Lessee defaults, breaches or fails to perform any terms of this Lease or (d) in the event of any default, breach or failure to perform any terms, provisions or conditions in any other agreement between Lessor and Lessee, or (e) if any proceeding in bankruptcy, reorganization, receivership or insolvency is commenced by or against Lessee or Lessee's property or assets, or (f) if Lessee makes an assignment for the benefit of one of more of Lessee's creditors, or (g) if Lessee seeks relief under any other law providing for the relief of debtors, then, if and to the extent permitted by applicable law, Lessor shall have the right to exercise any one or more of the remedies set forth in Section 16 below. (**Ex. A, Section 15**)

e. Upon the happening of any one or more events of default described in Section 15 above, which remains uncured after fifteen (15) days, Lessor shall have the right to declare the entire balance of rent due and immediately payable; and/or commence an action against Lessee for all sums due hereunder; and/or without demand or legal process to enter into the premises where the Equipment may be found and take possession of and remove same, whereupon all rights of Lessee in the Equipment shall terminate absolutely. Lessor may retain all prior payments by Lessee and sell the Equipment at public or private sale with notice to Lessee, at which sale Lessor may be a purchaser, and the proceeds of such sale less all expenses incurred by Lessor in connection therewith, including, but not limited to retaking, storing, repairing,

reselling, delivering commissions, and attorneys' fees will be added to the total sum due under this Lease, which shall be immediately payable by Lessee. The foregoing remedies shall be in addition to all other remedies available to Lessor at law or in equity. All remedies of Lessor are cumulative and may, to the extent permitted by law, be exercised concurrently or separately, and the exercise of any one remedy shall not be deemed to be an election of such remedy. In addition to other remedies, a twelve percent (12%) monthly finance charge shall be added to all late payments. (**Ex. A, Section 16**)

10. A true and correct copy of the Lease is attached as **Exhibit A**.

11. The total sum due under the Agreement was incorrectly calculated therein as $5,568,860.00; however, Defendant's auditors later identified the correct figure and Defendant acknowledged that the monthly invoices combined with the agreed-upon 36-month term were indeed accurate such that the correct total sum due was $6,795,093.70. (**Ex. A, Section 4**)

12. Beginning on July 28, 2023, Defendant began making incremental payments towards the initial deposit described in Section 4(a), and by October 18, 2023, had paid Plaintiff One Million Two Hundred Thousand Dollars ($1,200,000.00).

13. Plaintiff began delivering equipment to Defendant on or about September 15, 2023, including an enormous fryer and related appurtenances used to filter cooking oil and convey thermal fluid (the "Equipment"). Photographs of the Equipment are attached as **Exhibit B**.

14. Almost immediately, Defendant defaulted on its obligation to make the monthly payments described in the Lease and has made no payment since October 18, 2023. (**Ex. A, Section 4(b)**).

15. Plaintiff notified Defendant of its default and ceased to deliver additional equipment until the payment delinquency could be resolved.

16. However, Defendant began a series of internal corporate changes, including the removal of various management employees with whom Plaintiff had negotiated the Lease.

17. For more than six months, Defendant suggested to Plaintiff that it intended to negotiate a lump sum buyout of the Equipment and ignore its remaining payment obligations under the Lease.

18. However, in the summer of 2024, Defendant advised Plaintiff that it no longer had clear internal direction and was thus unable to make *any* commitment to honor the Lease.

19. Then on September 26, 2024, Defendant publicly announced a major debt restructuring and the introduction of $52 million in new capital "for general corporate purposes and transaction fees" that will "support the expansion of the [Defendant's] manufacturing capabilities and drive several corporate initiatives to position the Company for profitable long-term growth." *See* https://s3.amazonaws.com/b2icontent.irpass.cc/3003/rl139491.pdf (last visited March 26, 2025).

20. Nonetheless, Defendant still refused to honor its obligations under the Lease, and after discussions between counsel for the Parties were unsuccessful, Plaintiff provided formal notice to Defendant of the breach and intent to exercise all remedies under the Lease on February 5, 2025, including the right to immediately take possession of the Equipment and recover payment in full on the balance of the Lease.

## COUNT I
## Breach of Contract

21. Plaintiff realleges and incorporates by reference all allegations contained in the preceding paragraphs.

22. Defendant breached the Lease by, *inter alia,* failing to make timely payments to Plaintiff, and failing to return the Equipment.

23. Plaintiff fully performed its obligations under the Lease, and as a direct and proximate result of Defendant's breach, Plaintiff has incurred damages in an amount to be determined at trial.

## COUNT II
## Replevin

24. Plaintiff realleges and incorporates by reference all allegations contained in the preceding paragraphs.

25. Plaintiff is the lawful owner of all equipment delivered to Defendant under the lease, and thus title to such equipment remains in Plaintiff's name.

26. Despite having no legal right and contrary to Plaintiff's demand under the Lease, Defendant has retained possession of the Equipment at its Bolingbrook facility.

27. Pursuant to R.C. § 2737.01, et seq., Plaintiff respectfully requests that the Court order the immediate return of the Equipment to Plaintiff and/or timely conduct all hearings and issue all notices required under Ohio law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. An order directing Defendant to return all equipment delivered under the Lease to Plaintiff;

B. An order for compensatory damages in an amount to be determined at trial;

C.  An award of attorney's fees and costs incurred by Plaintiff in prosecuting this action; and

D.  Any other and further relief in law or equity to which Plaintiff may be entitled under the law.

> Respectfully submitted,
>
> DOOLEY, GEMBALA, McLAUGHLIN
> & PECORA CO., LPA
>
> */s/ Matthew A. Dooley*
> Matthew A. Dooley (0081482)
> 5455 Detroit Road
> Sheffield Village, Ohio 44054
> Telephone:   (440) 930-4001
> Facsimile:   (440) 934-7208
> Email:         mdooley@dooleygembala.com
> *Counsel for Plaintiff 625 Leasing, LLC*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable herein.

> */s/ Matthew A. Dooley*
> Matthew A. Dooley (0081482)
> *Counsel for Plaintiff*

7